[S. F. No. 16168.   In Bank.—July 28, 1941.]

A. D. CLAYTON, Plaintiff, v. WILLIAM A. SCHULTZ et al., Respondents; PHINEAS D. CLAYTON, Intervener and Appellant.

J. H. Sapiro, Abraham Setzer and J. E. White for Appellant.

Thomas T. Califro for Respondents.

THE COURT.—This appeal is from a judgment rendered against Phineas D. Clayton which, among other things, directed him to pay to the defendants the sum of $1,633 58 as a result of accounting proceedings had in connection with a quiet title action brought by A. D. Clayton in 1932, in which Phineas D. Clayton (hereinafter referred to as plaintiff) had intervened, claiming ownership of the real property involved by virtue of a delinquent tax sale and the subsequent acquisition of the interests of A. D. Clayton, the purchaser thereunder. The rights of the latter are not involved herein.

In the complaint in intervention it was alleged that the defendants in the action claimed some interest in or title to the said real property, but that such claim or interest was subordinate to the title of the intervener. The defendants answered, setting up their own title, and judgment was rendered in their favor. On appeal from such judgment (*Clayton* v. *Schultz*, 4 Cal. (2d) 425 [50 Pac. (2d) 446]), it was held that the record was insufficient to properly determine the rights of the parties under the tax sale proceedings, and therefore the judgment was reversed. In its opinion rendered therein this court stated that if upon a retrial the tax proceedings should be held to have been defective the purchaser thereunder would be entitled to reimbursement for "all taxes, costs, penalties and expenses" incurred in his attempt to secure title from the state, and that the said purchaser should be held to account for rentals collected by him from the property during the period of his possession under the tax deed. Thereafter, a retrial was had which resulted in a judgment for plaintiff, and on appeal therefrom the judgment was reversed (*Clayton* v. *Schultz*, 22 Cal. App. (2d) 72 [70 Pac. (2d) 512]). The court there ruled that the proceedings leading up to the tax sale were irregular in that publication of the delinquent tax lists was had in a *supplement* to a newspaper, contrary to the provisions of section 3766, Political Code, and that because of such irregularity the tax deed was void and the plaintiff had secured no rights thereunder. In that decision it was also said that since the cause might again be retried the purchaser must be reimbursed for "all taxes, costs, penalties, and expenses incurred in his attempt to secure title from the State," the said purchaser to account for rentals collected from the property during the period of his possession under the tax deed.

Thereafter, and on November 29, 1937, pursuant to a motion filed in the superior court "to give effect to the decision of the appellate court" a referee was appointed and the court directed that an accounting be had of the expenses incurred by the purchaser in pursuit of title, and of the rentals collected from the property during plaintiff's possession thereof. Also, as a part of those proceedings had in the superior court, and over the objection of the defendants that the issue as to ownership of the property was res judicata, the trial court received evidence on that issue, which evidence, however, was later stricken from the record. Subsequently, on receipt of the report of the referee on the accounting proceedings, the trial court rendered its findings and decree by which the defendants were declared to be the legal owners of the real property involved, and plaintiff was ordered to pay to the defendants the said sum of $1,633.58, which was found to be the amount remaining after the expenses incurred in pursuit of title to the real property had been deducted from the total amount of rentals collected by plaintiff while in possession of the property. This appeal is from that judgment.

Plaintiff's principal contention is that the trial court erred in granting the defendants' motion to strike from the record the testimony adduced by plaintiff with respect to the publication of the delinquent tax lists—which motion was predicated on the claim that the issue as to ownership of the property had been conclusively determined by the District Court of Appeal in favor of the defendants. Plaintiff contends that the issue was not res judicata for the reason that the District Court of Appeal merely reversed the judgment and gave no directions as to the entering of a decree in favor of the defendants, and that such unqualified reversal set the case at large again for a trial de novo. (Atchison etc. Ry. Co. v. Superior Court, 12 Cal. (2d) 549, 555 [86 Pac. (2d) 85]; Erlin v. National Union Fire Ins. Co., 7 Cal. (2d) 547, 549 [61 Pac. (2d) 756]; Central Sav. Bank of Oakland v. Lake, 201 Cal. 438, 443 [257 Pac. 521]; Monson v. Fischer, 219 Cal. 290 [26 Pac. (2d) 6]; Heinfelt v. Arth, 4 Cal. App. (2d) 381, 383 [41 Pac. (2d) 191].) Plaintiff further contends that on such new trial the law of the case on the question of title was not applicable because the evidence so stricken was different from that offered at the former trial.

(*Rasmussen* v. *Fresno Traction Co.,* 15 Cal. App. (2d) 356, 359 [59 Pac. (2d) 617]; *Sichterman* v. *R. M. Hollingshead Co.,* 117 Cal. App. 504, 506 [4 Pac. (2d) 181]; *Aurenz* v. *Los Angeles Ry. Corp.,* 35 Cal. App. (2d) 615, 618 [96 Pac. (2d) 397]; *Sheets* v. *Southern Pac. Co.,* 1 Cal. (2d) 408, 411 [35 Pac. (2d) 121].)

An examination of the decision of the District Court of Appeal shows that the question of the regularity of the tax proceedings leading up to the sale of the property, as well as the issue as to plaintiff's title, was squarely presented and determined by that court. It was there said: ''The sole and only question here presented is: 'Were the proceedings leading up to the sale of the real property herein involved for nonpayment of taxes regular and legal and sufficient to support the tax deed, which is the basis of plaintiff's title?' '' Attention was also directed to the fact that two exhibits which were offered in evidence showed that publication of the delinquent tax lists here involved (in the years 1927 and 1932) was made respectively in ''supplements'' to certain newspapers, and that the parties *conceded* they were so made ''and in no manner other than set out in said exhibits.'' In its decision the court further ruled that by an amendment in 1921 to section 3766, Political Code, the legislature had intended to eliminate the practice of publication of delinquent tax lists in *supplements* to a newspaper; that the tax deed which formed the basis of plaintiff's claim to title was entirely dependent upon the validity of such publications; that the giving of notice of tax delinquency in the manner and form prescribed by the statute was an essential jurisdictional fact; and, finally, that ''the tax deed was void, and the plaintiff secured no rights thereunder.''

From the foregoing it is clear that in the decision rendered by the District Court of Appeal the issue as to title claimed by virtue of the tax sale was conclusively determined against plaintiff as a matter of law. (See, also, *Clayton* v. *Schultz,* 12 Cal. (2d) 703 [87 Pac. (2d) 355], p. 707.) ▮ Moreover, with respect to the evidence adduced by plaintiff in the present case on that issue, and which the trial court struck from the record, it may here be said that such evidence did not militate against the conclusion of the District Court of Appeal that the publications were made in a supplement to a newspaper. The evidence so stricken was not materially different from and was but cumulative of that submitted by

plaintiff at the preceding trial, and on which the District Court of Appeal based its ruling. (*Estate of Baird,* 193 Cal. 225, 245 [223 Pac. 974] ; *Swarzwald* v. *Cooley,* 39 Cal. App. (2d) 306, 320 [103 Pac. (2d) 580] ; *United Iron Wks.* v. *Standard B. C. Co.,* 98 Cal. App. 517, 519 [277 Pac. 183].) The trial court, therefore, did not err to plaintiff's prejudice when it ordered such evidence stricken from the record.

There is no merit in plaintiff's contention that the pleadings of the defendants were insufficient on which to predicate affirmative relief in their favor. That question was before this court on the first appeal and was there decided adversely to plaintiff's contention (*Clayton* v. *Schultz,* 4 Cal. (2d) 425, 432 [50 Pac. (2d) 446]).

The parties are not in agreement as to the propriety of the allowance and rejection of certain items of expense which were assertedly incurred by plaintiff otherwise than "in pursuit of title" and after he had taken possession of the property under the tax deed. The trial court allowed the sum of $119.08 which plaintiff had expended on April 16, 1936, in payment of taxes for the year 1935–1936, and disallowed the sum of $845.51, which he had expended for repairs, maintenance, management and insurance in connection with the property during the period he was in possession.

At the time the property was purchased at the tax sale, section 3898, subdivision 5, of the Political Code, provided that whenever it had been determined that such a sale was void and that the purchaser from the state should not be awarded the property so purchased, no decree of the court should be made declaring a forfeiture of the property except on condition that the former owner repay to the purchaser the full amount of all taxes, penalties and costs paid out and expended by him, to be determined by the court, in pursuit of the state's title to the property so sold. It is obvious that since the item of $119.08 for 1935–1936 taxes was expended after plaintiff had secured the tax deed and had entered into possession of the property, reimbursement for this item should not be allowed under section 3898 of the Political Code. (See *Butterfield* v. *Union Hollywood W. Co.,* 39 Cal. App. 605 [179 Pac. 524] ; *O'Reilly* v. *All Persons, etc.,* 29 Cal. App. 49 [154 Pac. 474].) And it is likewise true that reimbursement of the sum of $845.51 expended by the plaintiff after he obtained the tax deed is not contemplated by that

section. ■ However, because of the demands of the defendants to recover rentals collected by the plaintiff, the litigation finally resolved itself into an accounting suit between the parties wherein the principles of equity should govern the question of allowable cross-demands and offsets. Therefore, if the plaintiff is to be held accountable to the defendant for gross rentals, in accordance with the trial court's ruling, he should be entitled to have as an offset against the total amount of such rentals any proper expenditure which he had made while in possession, in preserving, protecting and maintaining the property in such manner as to permit the yielding of rentals. The general rule is that where one is charged with rentals collected he ordinarily is entitled to a credit for expenditures properly made for repairs and preservation of the realty. The situation here presented is analogous to an action for an accounting brought against a mortgagee in possession of mortgaged property. (See *Raynor* v. *Drew*, 72 Cal. 307, 312 [13 Pac. 866]; *Murdock* v. *Clarke,* 59 Cal. 683; 17 Cal. Jur., pp. 1039, 1040; Pom. Eq. Juris., 4th Ed., Vol. 3, p. 2914; *Wadleigh* v. *Phelps,* 149 Cal. 627 [87 Pac. 93].) In *Raynor* v. *Drew, supra,* the court ruled that a mortgagee in possession might make such repairs as were reasonably necessary for the preservation of the property, but not permanent improvements ''or things which conduced merely to his comfort or convenience.'' No claim is here made that the expenditures for repairs, etc., were for anything other than for items which were reasonably necessary for the preservation of the property, and the evidence shows they were not improper expenditures within the rule referred to. No distinction of sufficient importance appears between a mortgagee in possession who has collected rentals and made expenditures reasonably necessary to preserve the property, and the situation here existing, to warrant the application of a different rule in this equitable action,—and under the particular facts of this case, culminating as it did in an action in equity for an accounting, we will not disturb the holding of the trial court allowing the plaintiff the benefit of the item of $119.08, paid for taxes for the year 1935–1936.

Because of the error of the trial court in its refusal to allow the item of $845.51, a modification of the court's findings and conclusions of law with regard to the accounting will be necessary, and no further consideration need be given to plaintiff's contention that the trial court erred in awarding

him a smaller sum as interest on the principal amount allowed him as reimbursement than he would have been entitled to had the interest been properly computed.

The trial court found plaintiff was entitled to the principal sum of $1121.14, as representing proper items of reimbursement, together with interest thereon (for the period from July 1, 1932, to February 5, 1938) in the sum of $119.08—comprising a total sum of $1240.22. It was found that plaintiff had collected the sum of $2873.80 for rentals during the period of his possession under the tax deed and, therefore, that the defendants should have judgment in the sum of $1633.58—the difference between the expenditures for which allowance had been made to plaintiff and the rentals received by him.

The principal sum of $1121.14 embraced the following separate items of expenditure: $133, paid on July 1, 1932 (for the purchase price of the property at the tax sale); $869.06, expended on July 26, 1932 (for delinquent taxes, penalties and assessments against the property); and the sum of $119.08 for 1935–1936 taxes. Plaintiff is entitled to an allowance of the two items expended in July, 1932, in pursuit of title, which amount to the sum of $1002.06, and $119.08 (for 1935–1936 taxes)—together with interest at seven per cent on each of such items from the respective dates of payment to February 5, 1938, aggregating the sum of $403.38, and the additional sum of $845.51 for maintenance, repairs, etc.,—making a total allowance to plaintiff in the sum of $2370.03. The defendants are entitled to the difference between that sum and the amount of the rentals collected, which amounts to the sum of $503.77.

Accordingly, the findings of fact and conclusions of law are amended in the respects indicated, and the decree is modified to show that the defendants are entitled to a money judgment in the sum of $503.77.

As so modified, the decree is affirmed, neither party to recover costs on appeal.

Appellant's petition for a rehearing was denied August 25, 1941.